UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CSM WORLDWIDE, INC.,
a Michigan corporation,

        Plaintiff,

v.

MORGAN STANLEY & CO.
INCORPORATED,
a Delaware corporation,

        Defendant.

Case # 2:09-cv-12918

**COMPLAINT
AND JURY DEMAND**

Plaintiff CSM Worldwide, Inc. avers:

**Parties, Jurisdiction and Venue**

1.    Plaintiff CSM Worldwide, Inc. ("CSM") is a corporation organized and existing under the laws of the State of Michigan, and maintains its principal place of business at 21500 Haggerty Road, Suite 300, Northville, Michigan.

2.    Defendant Morgan Stanley & Co. Incorporated ("MS") is a corporation organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 1585 Broadway, New York, New York.

3. This action arises under the Lanham Act, 15 U.S.C. §§ 1051 – 1141n, and the Copyright Act, 17 U.S.C. §§ 101 – 1332. This court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 & 1338.

4. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and (c), and 28 U.S.C § 1400(a) because MS maintains offices, transacts business, and is qualified to transact business as a foreign corporation in the State of Michigan.

**Factual Background**

The Business of CSM Worldwide

5. CSM is a closely-held corporation and was founded in Lansing, Michigan in 1991. As of this date, CSM is a global organization with offices located throughout the world with its global headquarters in Northville, Michigan.

6. CSM employs over 50 employees at its Northville and Grand Rapids, Michigan offices.

7. CSM delivers automotive market forecasting services and strategic advisory solutions to automotive manufacturers, suppliers, logistics firms, accounting firms, financial organizations, commercial and investment banks, private equity firms and hedge funds.

8. CSM has developed its automotive market forecasts to provide automotive manufacturers, suppliers, and financial and investment organizations with the necessary tools and market intelligence to support their business decisions, strategic plan development and financial investment.

9.     CSM's automotive market forecasts enable CSM's customers to anticipate new vehicle development and sales expectations, efficiently allocate resources, understand future automotive supply chain needs, plan production material purchases and invest in new technology with a better understanding of their potential return on investment.

10.    The vast majority of CSM's customers are global or multi-national firms and many of these global and multi-national firms transact business in China, one of the largest and fastest growing automotive markets in the world today.

11.    Many of CSM's U.S. based customers subscribe to CSM's China and Asia automotive market forecasts because such U.S. based customers transact business, and assess present and future investments, joint ventures and supply relationships in China and Asia.

12.    CSM's forecasts cover certain automotive economic regions as delineated by CSM throughout the world, including Greater China, South Asia, Japan/Korea, North America, South America, Europe and Middle East/Africa.

13.    CSM's automotive market forecasts include global, regional and market-level economic, sales, production, manufacturing and capacity data and OEM strategies, including, but not limited to:

- Vehicle Production Forecasts
- Vehicle Sales Forecasts
- Powertrain Forecasts
- Supply Chain & Technology Forecasts

14. CSM offers its forecast subscriber customers a variety of subscription options. Customers can receive the forecasts, delivered in hard copy and electronic mediums, either one-time per year (as a single delivery), or as an ongoing subscription, updated monthly via electronic medium with hard copy materials updated each quarter. Prices vary based on region and update frequencies.

15. CSM also offers several other valuable services to its clients: "The CSM Insider Series" outlook conferences and CSM's Executive Summaries. The CSM Insider Series conferences are held in each region where CSM has offices. These conferences are designed to update CSM's clients (prospective clients are invited to attend) on the most recent developments in the automotive industry in their region and globally. Participation is by invitation only. Participants are charged a fee to attend these conferences, and CSM is highly selective as to who is allowed to register and attend. CSM also offers "Executive Summaries" which recap recent events or important industry matters for its busy executive-level clients. These Executive Summaries are designed strictly as a perk for the CSM client who subscribes to multiple regions.

16. The CSM brand is known worldwide throughout the automotive industry. CSM executives are regularly quoted in the world press regarding automotive supply, technology and market issues, regularly present at various industry seminars and regularly provide insight to governmental and quasi-governmental agencies. CSM provides market intelligence to its customers and, as such, CSM devotes most of its resources to the development of its unique, branded proprietary automotive market forecasts and the sale of same to current and prospective customers.

17. CSM spends millions of dollars each year developing, maintaining and promoting its automotive forecasts. CSM's forecasts, and its advisory services emanating from these forecasts, are CSM's sole source of revenue. As a result of these efforts and CSM's prominence as a leader in the automotive market forecasting business, CSM protects its forecasts and proprietary information through contractual restrictions in its agreements with customers, password protected internet access for its forecasts, and inclusion of the following language in its forecast materials:

> © Copyright 2009, CSM Worldwide, Inc. CSM Worldwide, Inc. is the copyright holder for this document. No part of this document may be copied, downloaded, stored in a retrieval system, further transmitted or otherwise reproduced, stored, disseminated, transferred, or used, in any form or by any means, without CSM Worldwide, Inc's prior written agreement. Each reproduction of any part of this document must contain notice of CSM Worldwide, Inc's copyright as follows: © Copyright 2009, CSM Worldwide, Inc. Viewing and/or using the data contained in this copyrighted document shall constitute a contract between the viewer and/or user and CSM Worldwide, Inc. that the viewer and/or user will not violate CSM Worldwide, Inc's above stated copyright policy. By viewing and/or using the data contained in this copyrighted document, the viewer and/or user warrants that he/she is authorized and has the full authority to bind any corporate entity that may benefit from said viewing and/or use to the above referenced copyright contract and a general subscription contract for the viewing and/or use of the document, including the payment of all subscription fees.

<u>The Business of Morgan Stanley</u>

18. MS is a global banking, financial, and investment advisory organization with office locations throughout the world.

19.     In connection with the U.S. Government's Troubled Asset Relief Program (the "TARP bailout") implemented in October, 2008, MS received $10 billion in taxpayer funded TARP bailout funds.

20.     According to MS' website, MS provides an array of financial services for both individual and institutional organizations, including economic and industry forecasts.

21.     Upon information and belief, MS provides automotive industry research, forecasts and analyses information for its customers.

22.     Upon information and belief, MS is a competitor of CSM in the business of automotive market research, analyses and forecasting.

23.     Upon information and belief, MS relies upon, makes use of, and incorporates forecasts from organizations like CSM and CSM's competitors in developing its own automotive market forecasts and analyses.

24.     According to MS' website, MS maintains comprehensive policies and protocols regarding its corporate governance including ethics, practices and procedures and employee conduct.  In addition, as an investment bank and now as a bank holding company which it became to obtain TARP bailout funds, MS is subject to a vast array of statutory and regulatory policies which govern the conduct of its business and the conduct of its employees and agents.

25. MS' Code of Ethics and Business Conduct provides, in part:

> FOLLOW BOTH THE LETTER AND THE SPIRIT OF THE LAW
> AND MORGAN STANLEY POLICIES:
>
> We are subject to the laws and regulations of numerous jurisdictions around the world. It is your responsibility to understand the laws applicable to your responsibilities and to comply with both the letter and the spirit of these laws. This requires that you avoid not only actual misconduct but also the appearance of impropriety. Assume that any action you take ultimately could be publicized, and consider how you and Morgan Stanley would be perceived in that event. When in doubt, stop and reflect. Ask questions. If you are unclear about the application of the law to your responsibilities, or if you are unsure about the legality or integrity of a particular course of action, you must seek the advice of your supervisor or LCD. You will be held personally responsible for any improper or illegal acts you commit during your employment at or service to Morgan Stanley.

<u>Morgan Stanley's Theft of CSM's Forecasts</u>

26. As early as 2006, MS began to make a variety of contacts to CSM and made inquiries regarding CSM's forecast services and historical automotive data.

27. MS made several more inquiries in 2007 and 2008 regarding CSM's forecast services.

28. Ultimately, MS never became a client of CSM, and never purchased CSM's forecasts or other products or services.

29. Upon information and belief, MS employs an individual known as Bin Wang in its Shanghai, China office. Upon information and belief, Bin Wang is an employee of MS, or he is an authorized agent of MS.

30. MS assigned him an email address of Bin.B.Wang@morganstanley.com, and Wang's email signature block identified him as part of MS' "Research." (*See* Exh. A; Bin Wang's email.)

31. Upon information and belief, Bin Wang first became employed by MS in its Shanghai office in August 2007.

32. Upon information and belief, Bin Wang is part of MS' Shanghai China automotive research group and is held out by MS as an employee of MS to its customers, contacts and the public at large.

33. On February 9, 2009, Bin Wang sent an email from his MS email address through the domain "morganstanley.com" to an undisclosed list of recipients which contained CSM's Greater China Light Vehicle Production Forecast, January 2009 1st Quarter Forecast ("2009 Forecast"). (*See* Exh. A.)

34. The 2009 Forecast contained the copyright notice incorporated in paragraph 17, above.

35. The 2009 Forecast is registered with the U.S. Copyright Office. (*See* Exh. B; Certificates for the 2008 and 2009 registrations.)

36. Upon information and belief, the 2009 Forecast was sent to 85 recipients.

37. One of those 85 recipients was a CSM affiliated agent located in Shanghai, China.

38. Upon information and belief, CSM's Greater China Light Vehicle Production Forecast, November 2008 4th Quarter Forecast ("2008 Forecast") was also

distributed by Bin Wang from his MS email address through the domain "morganstanley.com" to an undisclosed number of recipients.

39. The 2008 Forecast is registered with the U.S. Copyright Office. (*See* Exh. B.)

40. Upon information and belief, in addition to the 2008 and 2009 forecasts, seven other CSM copyrighted forecasts and works[1] were copied and distributed, including:

- (1) Japan/Korea Light Vehicle Production Forecast – Executive Summary, October 2008 4th Quarter; copied and distributed by MS on or around December 2008.

- (2) South Asia Light Vehicle Production Forecast– Executive Summary, November 2008 4th Quarter Forecast; copied and distributed by MS on or around December 2008.

- (3) Japan/Korea Light Vehicle Production Forecast, November 2008 4th Quarter; copied and distributed by MS on or around December 2008.

- (4) South Asia Light Vehicle Production Forecast, November 2008 4th Quarter; copied and distributed by MS on or around December 2008.

- (5) South Asia Light Vehicle Production Forecast, July 2006 3rd Quarter; copied and distributed by MS on or around September 2007 and on or around January 2008.

- (6) China Powertrain Outlook April 2008; copied and distributed by MS on or around June 2008.

- (7) China Passenger Car Outlook April 2008; copied and distributed by MS on or around June 2008.

---

[1] These seven copyrighted publications are in the process of being registered with the U.S. Copyright office. At this time, the seven copyrighted publications are not included with the complained of counts below.

9

41. Upon information and belief, a total of nine of CSM's copyrighted forecasts and works were copied and distributed by Bin Wang from his MS email address through the domain name of "morganstanley.com" to MS customers, potential customers and/or MS partners or affiliates or persons interested in CSM's forecasts and automotive forecasts in general.

42. Upon information and belief, CSM's copyrighted forecasts were copied and distributed using MS' email server which is located in New York, New York.

43. Upon information and belief, some or all of the recipients of MS' emails containing CSM's copyrighted forecasts are either located in the United States or have email servers located in the United States and, therefore, there are multiple contacts and copies of the CSM copyrighted forecasts which were held, duplicated, transmitted and may, in fact, be archived on computer hard drives and email servers located in the United States.

44. Upon information and belief, MS knew or should have known that recipients of the CSM forecasts circulated by Bin Wang would, in turn, copy and distribute CSM's forecasts to their contacts.

45. CSM has demanded that MS provide the names and contact information, including email addresses for each recipient of Bin Wang's emails, which contained CSM forecasts, but MS has refused to provide this information.

46. At no time did MS purchase CSM's forecasts from CSM, nor did CSM provide the materials to MS.

47. At no time did CSM grant MS the authority to copy and distribute CSM's forecasts.

## Count I
## Unfair Competition Under 15 U.S.C. § 1125(a)

48. Plaintiff incorporates the allegations contained in paragraphs 1 – 47 here.

49. Upon information and belief, Bin Wang, as MS' authorized agent, had regular illicit and/or illegal access to CSM's forecasts.

50. Upon information and belief, since employed by MS, Bin Wang, as MS' authorized agent, had a regular practice of circulating the illicitly or illegally obtained CSM forecasts to various contacts.

51. Upon information and belief, the various contacts to whom Bin Wang regularly circulated CSM forecasts were: 1) other MS employees, 2) MS customers or clients, 3) potential MS customers and clients, 4) MS partners or affiliates and/or 5) Bin Wang's personal associates.

52. Upon information and belief, MS knew, or should have known, that recipients of the CSM forecasts circulated by Bin Wang would, in turn, copy and deliver CSM's forecasts to their contacts.

53. Since Bin Wang made regular use of his MS email account to circulate illicitly or illegally obtained CSM forecasts, MS knew, or should have known, that Bin Wang had no legal right to possess the CSM forecasts.

54. It is reasonable and logical to conclude that recipients of Bin Wang's emails containing CSM forecasts would assume that MS was lawfully in possession of

the CSM forecasts and that CSM had authorized MS and Bin Wang to copy and circulate the CSM forecasts.

55. Upon information and belief, as a result of the foregoing, MS has engaged in acts of unfair competition by distributing, marketing, or selling CSM's forecasts, or portions of its forecasts, to the public, incorporating CSM's forecasts in a calculated manner that is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of MS with CSM, or as to the origin, sponsorship, or approval of MS' goods, services, or commercial activities by CSM.

56. MS' conduct constitutes unfair competition and is in violation of the protections afforded under the Lanham Act where such conduct has a substantial effect in the U.S., especially in the State of Michigan.

57. Upon information and belief, MS' infringing, confusing, and unauthorized use of CSM's forecasts has been deliberate and willful and, has been committed with the intent to cause confusion and mistake and to deceive and defraud the public.

### Count II
### Copyright Infringement of TX 6-898-333

58. Plaintiff incorporates the allegations contained in paragraphs 1 – 57 here.

59. Plaintiff is the copyright owner of exclusive rights under the Copyright Act with respect to the 2009 Forecast which is the subject of Certificate of Copyright Registration TX 6-898-333 issued by the U.S. Copyright Office effective February 20, 2009. (*See* Exh. B.)

60. Among the exclusive rights granted to CSM under the Copyright Act are the exclusive rights to reproduce the work, prepare derivative works and perform and distribute the work to the public.

61. CSM is informed and believes that MS, without the permission or consent of CSM, has used CSM's work by reproducing, preparing derivative works, and distributing copies of the copyrighted work.

62. MS has violated CSM's exclusive rights of reproduction, performing and distribution.

63. MS' actions constitute infringement of CSM's copyrights and exclusive rights under the Copyright Act.

64. The foregoing acts of infringement were willful and intentional, in disregard of and with indifference to the rights of CSM.

65. As a result of MS' infringement of CSM's copyrights and exclusive rights under Copyright law, CSM is entitled to statutory damages pursuant to 17 U.S.C. § 504(c) (2009) for MS' infringement or willful infringement of the work, or actual damages sustained by CSM and other remedies allowed by the Copyright Act.

66. CSM is further entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505 (2009).

## Count III
### Copyright Infringement of TX 6-943-299

67. Plaintiff incorporates the allegations contained in paragraphs 1 – 66 here.

68. Plaintiff is the copyright owner of exclusive rights under the Copyright Act with respect to the 2008 Forecast which is the subject of Certificate of Copyright Registration TX 6-943-299 issued by the U.S. Copyright Office effective June 26, 2009.

69. Among the exclusive rights granted to CSM under the Copyright Act are the exclusive rights to reproduce the work, prepare derivative works and perform and distribute the work to the public.

70. CSM is informed and believes that MS, without the permission or consent of CSM, has used CSM's work by reproducing, preparing derivative works and distributing copies of the copyrighted work.

71. MS has violated CSM's exclusive rights of reproduction, performing and distribution.

72. MS' actions constitute infringement of CSM's copyrights and exclusive rights under the Copyright Act.

73. CSM is informed and believes that the foregoing acts of infringement have been willful and intentional, in disregard of and with indifference to the rights of CSM.

74. As a result of MS' infringement of CSM's copyrights and exclusive rights under Copyright law, CSM is entitled to actual damages sustained by CSM, and other remedies allowed by the Copyright Act.

**Relief Requested**

WHEREFORE, CSM asks for judgment against MS as follows:

1. That MS and its officers, agents, servants, employees, representatives, successors, and assigns, and all persons in active concert or participation with MS, be enjoined from copying, reproducing, distributing, adapting, or publicly displaying CSM's copyrighted forecasts.

2. As part of a final order, that MS be ordered to destroy all documents and other items, electronic or otherwise, in its possession/custody or control that infringe the copyrights of CSM.

3. For restitution in the amount of the benefit to MS by reason of its unlawful conduct.

4. For CSM's actual damages.

5. For a full accounting of all profits, income, receipts, or other benefits derived by MS as a result of its unlawful conduct.

6. For statutory damages under the Copyright Act.

7. For attorneys' fees and full costs as allowed under the Copyright Act.

8. For such other and further relief as this court deems just and appropriate.

**Jury Demand**

CSM demands a trial by jury on issues so triable.

Respectfully submitted:

Dated: July 23, 2009                BERRY MOORMAN P.C.

By: /s/ James P. Murphy
    535 Griswold, Suite 1900
    Detroit, Michigan 48226
    Phone (313) 496-1200
    Fax (313) 496-1300
    Email: murph@berrymoorman.com
    Michigan Bar: P36728

    David M. Foy
    535 Griswold, Suite 1900
    Detroit, Michigan 48226
    Phone (313) 496-1200
    Fax (313) 496-1300
    Email: dfoy@berrymoorman.com
    Michigan Bar: P42574

    Richard R. Zmijewski
    535 Griswold, Suite 1900
    Detroit, Michigan 48226
    Phone (313) 496-1200
    Fax (313) 496-1300
    Email: rzmijewski@berrymoorman.com
    Michigan Bar: P70947

    ATTORNEYS FOR PLAINTIFF